# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALLIE A. DURHAM, an individual on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br>     v.<br><br>CONTINENTAL CENTRAL CREDIT, et al.,<br><br>                              Defendants. | CASE NO. 07cv1763 BTM(WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

Defendants Continental Central Credit, Inc. ("CCC") and San Clemente Cove Vacation Owners Association ("Association") (collectively "Defendants") have filed a motion for summary judgment. Plaintiff has filed a motion for class certification. For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's motion for class certification is **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

In 2003, Plaintiff, her daughter, and son-in-law became the owners of a timeshare interest in real property located at San Clemente Cove. (Partnership Grant Deed, Pl.'s Ex. A.) Plaintiff claims that she signed a contract but has been unable to find the contract.

(Durham Decl., ¶ 4.)

According to Plaintiff, about two months after purchasing the timeshare interest, her son-in-law lost his job, and they were no longer able to afford the payments. (Durham Decl., ¶ 6.) Plaintiff claims that Grand Pacific Resorts, the managing agent for the Association, told her that if she could not make the payments, the bill would go into default and the timeshare interest would revert back to the owner. (Id.)  Plaintiff claims that she was not told that she would still be responsible for the Home Owner's Association dues. (Id.)  Sometime thereafter, certain amounts were assessed against Plaintiff by the Association for Maintenance Fees under the authority of the written rules and by-laws of the Association. (Pl.'s Undisputed Fact 5.)

Pursuant to an agreement dated October 9, 2000, the Association may assign delinquent accounts to CCC for collection. (Ex. 2 to Hubbard Decl. (Defs.' Ex. 3).) The Agreement provides, "The contingency fee shall be 40% on all debtor accounts, payable to Continental Central Credit, Inc., only after monies have been recovered."

In September 2006, Plaintiff received a collection notice from CCC. The notice was dated September 11, 2006, and indicated that Plaintiff owed a total balance of $1,890.27, consisting of a principal balance of $1,339.45, interest in the amount of $15.04, and a collection fee of $535.78. (Ex. A to FAC.) The notice stated, "Your account has been assigned to us for immediate collection. Please remit the balance in full or present your defense against this claim. This is an attempt to collect a debt. Any information obtained will be used for that purpose." The reverse side of the notice included a disclosure of rights under California's Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act. (Defs.' Ex. 5.)

Subsequently, Plaintiff received a second letter from CCC dated October 9, 2006. This letter stated:

> The above-referenced claim has been assigned to our firm. Because you have failed to comply with our request for payment, we may refer this account to our attorney for legal action, should he deem it appropriate. To prevent further collection efforts, payment in full is required immediately.
>
> If you choose to ignore this notice then:

> In the event judgment is rendered against you, sheriff fees for service of summons and complaint, legally allowed by the court, can be included in said judgment. Also, attorney fees will be charged if provided by contract. Interest will accrue at statute rates.

(Ex. B to FAC.)

In a letter dated October 17, 2006, Plaintiff disputed the debt in writing and demanded verification. (Ex. C to FAC.) Plaintiff's letter was received by certified mail at CCC's office on October 23, 2006. (Defs.' Undisputed Fact 45.) According to CCC, after receiving Plaintiff's letter, CCC stopped collection proceedings and requested information regarding the claim from the Association. (Defs.' Undisputed Fact 46.) CCC claims that it sent Plaintiff the information that was available in its own office along with a "settlement-in-full" letter and later sent Plaintiff additional information it received from the Association. (Spielman Dep. (Defs.' Ex. 4) at 59:18-21, 62:5-22, Exs. 3, 4 & 9.) Plaintiff denies that she received any more information from CCC or the Association after she sent her letter requesting verification. (Durham Decl. ¶ 11.) Plaintiff has not paid any of the Association fees that are allegedly owed. (Defs.' Undisputed Fact 8.) According to CCC, the account was canceled as uncollectible on March 20, 2007. (Spielman Dep. at 21:13-25.)

In the FAC, Plaintiff alleges that Defendant CCC violated the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692e(1), 1692e(2)(A), 1692e(2)(B), 1692f(1), and 1692g. Plaintiff also alleges that Defendants violated California's Robbins-Rosenthal Fair Debt Collect Practices Act ("Rosenthal Act"), Cal. Civil Code §§ 1788.17, 1788.13(e).

## II. DISCUSSION

### A. Summary Judgment Motion

#### 1. 15 U.S.C. § 1692f(1)

Plaintiff alleges that CCC violated 15 U.S.C. § 1692f(1), which prohibits: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Specifically, Plaintiff claims that the 40% collection fee CCC

added to the HOA fees owed to the Association is unreasonable and unlawful because it is arbitrary and bears no relationship to the actual cost of collection.  CCC counters that the collection fee is actually *permitted* by California law and that, therefore, it has not violated § 1692f(1).  It is Plaintiff's burden to demonstrate that the disputed collection fee is illegal. Berryman v. Merit Property Mgmt., Inc., 152 Cal. App. 4th 1544, 1560 (2007).  The Court finds that Plaintiff has not satisfied her burden.

California Civil Code § 1366.1 (part of the Davis-Stirling Common Interest Development Act) provides, "An association shall not impose or collect an assessment or fee that exceeds the amount necessary to defray the costs for which it is levied."  California courts have held that although this section prohibits a homeowner's association from marking up fees or assessments to generate a profit for itself, it does not prohibit an association from hiring a vendor to perform services and charging the homeowner for the fee charged by the vendor. Brown v. Professional Cmty. Mgmt., Inc., 127 Cal. App. 4th 532, 538-39 (2005); Dey v. Continental Central Credit, 170 Cal. App. 4th 721, 729-30 (2008).  See also Berryman, 152 Cal. App. 4th at 1551-52.

California Civil Code § 1366(e) allows an association to recover "reasonable costs incurred in collecting the delinquent assessment, including reasonable attorney's fees . . . ."  These reasonable costs necessarily include the fees and profit charged by a vendor hired by the association to collect the debts. Brown, 127 Cal. App. 4th at 539.  If a homeowner believes that the fees charged by a vendor are out of line with the marketplace, the homeowner's remedy is to persuade the association's board of directors to find a company that can perform the services for less. Berryman, 152 Cal. App. 4th at 1560.  See also Brown, 127 Cal. App. 4th at 539 ("Competitive forces, not the statue, will constrain the vendors' fees and charges.").

In Dey, a case with facts very similar to this case, the plaintiff alleged that Continental attempted to collect delinquent homeowner's association fees in addition to a collection fee equal to 40% of the outstanding principal.  The plaintiff claimed that the defendants violated 15 U.S.C. § 1692f(1), by attempting to collect a collection fee that did not reasonably reflect

the actual cost of collection. Relying on Brown and Berryman, the court held that plaintiff had not met his burden of showing that the collection fee was prohibited by statute or contract and granted the defendants' demurrer. As in Dey, the 40% collection fee charged by CCC is not prohibited by Cal. Civil Code § 1366.1 or § 1366(e).

Plaintiff makes an additional argument that the collection fee violates Cal. Civil Code § 1671, which provides that liquidated damages clauses are void except where it would be impracticable or extremely difficult to fix the actual damage. See Bondanza v. Peninsula Hospital & Med. Center, 23 Cal. 3d 260 (1979) (holding that where the hospital's admission agreement provided that if the patient's account was referred to a collection agency, the debtor would pay "reasonable attorney's fees and collection expense, " the collection agency's practice of charging one-third of the amount due to the hospital as a collection fee violated section 1671). This same argument was rejected by the court in Dey on the ground that Dey's FAC did not allege any violation of section 1671 and did not allege any contract term pertaining to liquidated damages.

Like the plaintiff in Dey, Plaintiff fails to point to any contract term governing collection fees. Plaintiff believes she signed a contract at some point but has not found a copy of it and, more importantly, does not allege that the contract contained terms regarding collection fees. In all likelihood, the Association's right to recover collection fees is addressed in the Covenants, Conditions and Restrictions, which run with the land, and the policies and procedures thereunder. (See Pl.'s Ex. A (Partnership Grant Deed)).[1]

Following Brown, Berryman, and Dey, the Court holds that Plaintiff has failed to raise a triable issue with respect to whether the collection fee was prohibited by law. Therefore, the Court grants Defendants' motion as to Plaintiff's claim under 15 U.S.C. § 1692f(1).

---

[1] Plaintiff points to the Association's Annual Assessment Billing and Collection Policy (Ex. 1 to Spielman Dep. (Defs.' Ex. 4)), which provides that "related costs" for the engagement of professional collection agency services will be added to the delinquent owner's account. However, this policy is not a contract. Moreover, "related costs" would include the fees and profit charged by the professional collection agency.

**2. 15 U.S.C. § 1692e(1), (2)(A), and (2)(B)**

Plaintiff claims that CCC violated 15 U.S.C. § 1692e(1), (2)(A), and (2)(B), by adding an unlawful collection fee to the amount of the alleged debt and, thus, misrepresenting the amount lawfully due. As discussed above, Plaintiff has not shown that the collection fee was prohibited by law.

Plaintiff also attempts to argue that the collection fee was invalid because it was not authorized by the agreement between CCC and San Clemente Cove Homeowners, Inc. This agreement provided: "The contingency fee shall be 40% on all debtor accounts, payable to Continental Central Credit, Inc., only after monies have been recovered." Plaintiff argues that the agreement does not provide for the addition of the collection fee to the delinquent amount. However, the agreement does not prohibit the addition of the fee either. The agreement simply does not detail the manner in which the collection fee is to be paid to CCC. However, it is apparent that the parties agreed, whether orally or in a separate agreement, that the collection fee would be added to the delinquent accounts and collected from the debtor by CCC.

Plaintiff also argues that under the agreement, the collection fee is not due until the "monies have been recovered" and that, therefore, CCC misrepresented the amount of the debt when it included the collection fee in the notices it sent Plaintiff. Plaintiff's argument is unpersuasive. Under a common-sense interpretation of the agreement, CCC cannot demand payment of the collection fee *from the Association* on uncollected accounts, but, rather, must recover monies in order to claim the fee. The Agreement does not prohibit CCC from collecting the fee from the *debtor*.

Plaintiff has not raised a triable issue with respect to CCC's alleged violation of 15 U.S.C. § 1692e(1), (2)(A), and (2)(B). Therefore, Defendants' motion is granted as to these claims.

**3. 15 U.S.C. §§ 1692g, 1692e(10)**

Plaintiff claims that CCC violated 15 U.S.C. § 1692g and 15 U.S.C. § 1692e(10) by

failing to effectively provide a "Notice of Debt." Plaintiff has raised a triable issue of material fact with respect to these claims.

Section 1692g(a) requires a debt collector to send a written notice within five days of its initial communication with the consumer, stating: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector that the debt is disputed, the debt collector will obtain verification of the debt and a copy of such verification will be mailed to the consumer; and (5) a statement that upon the consumer's written request within the 30-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Section 1692g(b) provides, in relevant part:

> Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.*

(Emphasis added.)

Section 1692e(10) prohibits the use of false representation or deceptive means to collect or attempt to collect a debt.

For the same reasons discussed in the Court's Order Denying Motion to Dismiss filed on March 20, 2008, the Court finds that the second notice sent to Plaintiff overshadowed the disclosure of rights in the first notice and violated sections 1692g(b) and 1692e(10). The determination whether a collection letter violates § 1692g is subject to the "least sophisticated debtor" standard and is a question of law reserved for the court. Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir. 1997).

In Terran, the Ninth Circuit explained that in each of the cases where courts have held that a written communication overshadowed or contradicted a notice of the debtor's rights,

(1) payment was demanded within a time period less than the statutory 30 days granted to dispute the debt, and (2) this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had 30 days to dispute the debt. Id. at 1433. The Ninth Circuit held that there was no violation of 1692g in Terran because the collection letter's request that the debtor immediately telephone a collection assistant did not require immediate *payment* and did not overshadow the language in the *same* letter that notified the debtor that he had 30 days in which to dispute the debt. See also Renick v. Dun & Bradstreet Receivable Mgmt. Serv., 290 F.3d 1055 (9th Cir. 2002) (holding that second notice did not violate the FDCPA because it merely requested prompt payment in a non-threatening way and informed the debtor that he had 30 days to dispute the debt).

In contrast, in Barrientos v. Law offices of Mark L. Nichter, 76 F. Supp. 2d 510 (SDNY 1999), a case with facts very similar to the facts before this Court, the court held that the debt collector's second notice of debt violated sections 1692g and 1692e(10). The first notice informed the debtor of her right to dispute the validity of the debt within 30 days. The second notice, sent within the 30-day period, stated, in pertinent part: "We have been authorized by our client to take any lawful action we deem necessary to collect this debt. Please make payment today so we can put this matter to rest." The second notice did not reiterate the right of the debtor to dispute the debt. The district court held that the second notice overshadowed and contradicted the initial notice. The court explained that the second letter implied that only *immediate payment* could avoid adverse action by defendants. Id. at 515. The court also explained that the unsophisticated consumer could not be expected to grasp that the first letter took precedence over the more recent communication. Id.

As in Barrientos, the second notice sent by CCC was received by Plaintiff within the 30-day period. This second notice demanded immediate payment and did not reiterate Plaintiff's right to dispute the debt. The notice stated:

> The above-referenced claim has been assigned to our firm. Because you have failed to comply with our request for payment, we may refer this account to our attorney for legal action, should he deem it appropriate. To prevent further collection efforts, payment in full is required immediately.

(Ex. B to FAC.) Upon reading this language, an unsophisticated consumer would likely think that immediate payment was required to avoid adverse legal action. Therefore, Plaintiff has established that CCC violated sections 1692g(b) and 1692e(10).

CCC argues that even if the second notice overshadowed the disclosure of rights in the first notice, it cannot be held liable because the second notice was sent out unintentionally. 15 U.S.C. § 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

CCC presents evidence that all employees of CCC are required to read the FDCPA upon being hired and to work with an experienced collector for the first 60 days to make sure that they are familiar with the pertinent rules and regulations and CCC's notices. (Spielman Dep. (Defs.' Ex. 4) at 72:14-75:5.) According to CCC's interrogatory responses, although the computer system that generates the letters in the form of Exhibit B to the FAC indicates that the letters are "sent" when generated, some letters are actually sent on a later date. (CCC's Supp. Responses to Special Interrogatories Set No. Two (Defs.' Ex. 9), # 23.) CCC also claims that although it sent out 302 letters in the form of Exhibit B to the FAC within 30 days of sending out the initial notices, the letters were not sent out intentionally and "corrective procedures have been put into place." (Id.)

CCC is not entitled to summary judgment based on the bona fide error defense. CCC has not presented *facts* establishing that the sending of 302 letters before the expiration of the 30-day period resulted from a bona fide error. Indeed, the fact that corrective procedures have now been put into place suggests that there were no safeguards previously. The fact that CCC employees receive training upon being hired does not establish that CCC implemented policies and procedures to ensure that CCC complied with § 1692g.

Consequently, Defendants' motion for summary judgment is denied as to Plaintiff's claim under 15 U.S.C. §§ 1692g(b) and 1692e(10).

### 4. Rosenthal Act

Plaintiff claims that Defendants violated California's Rosenthal Act, specifically Cal. Civil Code §§ 1788.17 (by violating the FDCPA) and 1788.13(e) (by falsely representing that the alleged debt could be increased by the addition of an unlawful collection fee). Defendants are entitled to summary judgment on this claim because Plaintiff has not raised a triable issue with respect to whether the debt at issue in this case arose from a "consumer credit transaction."

The Rosenthal Act regulates collection practices with respect to "consumer debts" owing or alleged to be due or owing from a natural person by reason of a "consumer credit transaction." Cal. Civil Code § 1788.2(f). A "consumer credit transaction" is defined as a "transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes." Cal. Civil Code § 1788.2(e).

In this case, the underlying debt was incurred as a result of annual HOA assessments for general maintenance of the property and such things as furniture and appliance replacement. (Hubbard Dep. (Defs.' Exh. 3), 17:18-18:10, 19:3-12.) Incidental charges for things such as damage to the property or long distance calls incurred during a resident's stay are typically billed to a credit card kept on file. (Hubbard Dep. 20:16-22:14.)

The Court agrees with Defendants that the regular HOA assessments for ongoing maintenance and general services do not constitute a "consumer credit transaction." There is no evidence that Plaintiff or the other homeowners acquired services on credit from the Association.

Plaintiff argues that the Association is extending credit by way of the option it offers to homeowners to pay the HOA annual assessment in four payments over eight months. (Homeowner's Association Maintenance Fees and Billing Options (Ex. 1 to Spielman Dep.)). Although it is not entirely clear, it seems that Plaintiff takes the position that the installment option constitutes money "acquired on credit." Apparently, Plaintiff believes that the annual assessment is due on January 1, no matter what billing option is selected. Plaintiff is

mistaken. The assessment is either due in whole on January 1 or is due in four installments on January 1, February 28, May 31, and August 31. (Homeowner's Association Maintenance Fees and Billing Options.) Thus, the installment option is not tantamount to an extension of credit.

Because Plaintiff has failed to produce evidence that the underlying debt in this case was owed in connection with a "consumer credit transaction," Defendants are entitled to summary judgment on Plaintiff's Rosenthal Act claims.

## B. Class Certification Motion

Plaintiff moves for certification of two classes pursuant to Rule 23 of the Federal Rules of Civil Procedure. The first class, the "Collection Fee Class" is defined as (i) all natural persons with California addresses to whom (ii) Defendant CCC sent or caused to be sent a letter which added a "Coll fee" to Principal and Interest; (iii) on or after September 7, 2006 (a date one year prior to the filing of this action) (iv) in an attempt to collect a debt incurred for personal, family, or household purposes allegedly due a nonprofit home owners or vacation owners association; (v) which was not returned by the U.S. Postal Service.

The second class, the "Overshadowing or Contradicting Class," is defined as (i) all natural persons with California addresses to whom (ii) Defendant CCC sent or caused to be sent a letter in the form of Exhibit B to the FAC (iii) within 30 days of the date of sending a letter in the form of Exhibit A to the FAC (iv) on or after September 7, 2006; (v) in an attempt to collect a debt incurred for personal, family, or household purposes allegedly due a nonprofit home owners or vacation owners association (vi) which was not returned by the U.S. Postal Service.

Summary judgment has been granted in favor of Defendants on Plaintiff's FDCPA claims premised on the collection fee in addition to Plaintiff's Rosenthal Act claims. Therefore, Plaintiff's motion to certify the "Collection Fee Class" is denied.

As for the "Overshadowing or Contradicting Class," the Court denies Plaintiff's motion without prejudice. The party seeking class certification bears the burden of establishing that

each of the four requirements of Fed. R. Civ. P. 23(a) and at least one requirement of Rule 23(b) have been met. Dukes v.Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007). The requirements of Rule 23(a) are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff has not satisfied her burden of establishing the first requirement of Rule 23(a) – i.e., numerosity. According to CCC's interrogatory responses, 302 letters in the form of Exhibit B to the FAC were sent out within 30 days of sending letters in the form of Exhibit A to the FAC during the class period. (Pl.'s App. 4.) Of these 302 letter, 108 were returned by the U.S. Post Office as undeliverable, leaving 194 as presumably received. (Id.) However, as pointed out by Defendants, Plaintiff's interrogatory was not limited to California residents or natural persons, nor was it limited to attempts to collect debts arising from unpaid homeowner or vacation owner association fees.

Therefore, the Court cannot conclude that the class is so numerous that joinder of all members is impracticable. The Court denies Plaintiff's motion for class certification without prejudice.

### III. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is **GRANTED** as to Plaintiff's FDCPA claims under 15 U.S.C. §§ 1692f(1), 1692e(1), 1692e(2)(A), and 1692e(2)(B). Defendants' motion is also **GRANTED** as to Plaintiff's Rosenthal Act claims. Defendants' motion is **DENIED** as to Plaintiff's FDCPA claims under 15 U.S.C. §§ 1692g and 1692e(10). Plaintiff's motion for class certification is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

DATED: October 19, 2009

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge