**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SALLIE A. DURHAM, an individual on behalf of herself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CONTINENTAL CENTRAL CREDIT, et al.,<br><br>    Defendants. | CASE NO. 07cv1763 BTM(WMc)<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

Plaintiff has filed a second motion for class certification. For the reasons discussed below, Plaintiff's motion is **GRANTED**.

**I. BACKGROUND**

This action arises out of attempts by Continental Central Credit, Inc. ("CCC") to collect amounts assessed against Plaintiff by San Clemente Cove Vacation Owners Association ("Association").

In her First Amended Complaint ("FAC"), Plaintiff sues on behalf of herself and a purported class of similarly situated individuals, claiming that CCC violated the Fair Debt Collection Practices Act ("FDCPA"), specifically 15 U.S.C. §§ 1692e(1), 1692e(2)(A), 1692e(2)(B), 1692f(1), and 1692g. Plaintiff also claims that Defendants violated California's

Robbins-Rosenthal Fair Debt Collect Practices Act ("Rosenthal Act"), Cal. Civil Code §§ 1788.17, 1788.13(e).

In an order filed on October 20, 2009, the Court granted summary judgment in favor of Defendants on Plaintiff's claims based on CCC's attempt to collect a collection fee equal to 40% of the outstanding principal. The Court held that Plaintiff had failed to establish that such collection fee was prohibited by law. The Court also granted summary judgment in favor of Defendants on Plaintiff's Rosenthal Act claim because the underlying debt was not owed in connection with a "consumer credit transaction," as required by Cal. Civil Code § 1788.2(f).

The Court denied Defendants' motion for summary judgment with respect to Plaintiff's claim that CCC violated the FDCPA by sending Plaintiff a letter in the form of Exhibit B to the FAC ("Exhibit B letter") within 30 days of sending Plaintiff a letter in the form of Exhibit A to the FAC ("Exhibit A letter"). The Court held that the Exhibit B letter, which demanded immediate payment, overshadowed the Exhibit A letter's notice to Plaintiff of her right to dispute the debt within 30 days after receipt of the letter. The Court further held that the CCC was not entitled to summary judgment based on its bona fide error defense under 15 U.S.C. § 1692k(c).

The Court also denied without prejudice Plaintiff's motion for class certification on the ground that Plaintiff had failed to satisfy her burden of establishing that the class is so numerous that joinder of all members is impracticable.

## II. DISCUSSION

Plaintiff moves for certification of the "Overshadowing or Contradicting Class," consisting of (i) all natural persons with California addresses to whom (ii) Defendant CCC sent a letter in the form of Exhibit B to the FAC (iii) within 30 days of sending a letter in the form of Exhibit A to the FAC, as shown by the records of CCC (iv) on or after September 7, 2006 (v) in an attempt to collect a debt incurred for personal, family, or household purposes allegedly due on a nonprofit home owners or vacation owners association fees (vi) which

was not returned by the U.S. Postal Service.  As discussed below, the Court finds that Plaintiff has satisfied her burden of establishing that certification of the proposed class is appropriate.

### A. Requirements for Class Certification

The party seeking class certification bears the burden of establishing that each of the four requirements of Fed. R. Civ. P. 23(a) and at least one requirement of Rule 23(b) have been met. Dukes v.Wal-Mart, Inc., 509 F.3d 1168, 1176 (9th Cir. 2007). The requirements of Rule 23(a) are that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff seeks certification under Rule 23(b)(3), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiff also seeks certification under Rule 23(b)(2), which applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

### B. Rule 23(a) Requirements

#### 1. Numerosity

The numerosity requirement "requires examination of the specific facts of each case and imposes no absolute limitations." General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). Some courts have held that numerosity is presumed where the plaintiff class contains forty or more members. See, e.g., Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).

According to CCC, there are 103 accounts (with California addresses and for debts

arising from homeowner or vacation owner association fees) that were sent Exhibit B letters within 30 days of Exhibit A letters having been sent. In the context of this case, the Court finds that 103 members is sufficient to satisfy the numerosity requirement.

CCC argues that Plaintiff can only speculate about how many people actually qualify as members of the defined class because CCC's records designate a letter as being "sent" on the day that the letter is generated. According to CCC, if a letter is printed in the afternoon, it will not be mailed until the next day, and if a letter is printed on a Friday afternoon, it will not be mailed until the following Monday. Even if this is so, it seems to the Court that only a handful of the 103 accounts would fall into the category of cases where the Exhibit B letter may have been mailed more than 30 days after the Exhibit A letter was sent. Although CCC has the information that would allow it to identify these borderline cases, CCC does not do so. CCC cannot hide the ball and then complain that Plaintiff's numbers are speculative. Furthermore, the Court notes that despite the class definition, the 30-day period referenced in 15 U.S.C. § 1692g commences upon *receipt,* not sending, of the initial notice. Therefore, even if some letters in the form of Exhibit B may have been mailed after 30 days of the *sending* of the initial letters, these letters may very well have been sent within 30 days of the *receipt* of the initial letters.

The Court concludes that Plaintiff has satisfied the numerosity requirement.

### 2. Commonality

Rule 23(a)(2) requires that there be "questions of law and fact common to the class." "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). "The commonality test is qualitative rather than quantitative - one significant issue common to the class may be sufficient to warrant certification." Dukes, 509 F.3d at 1177.

CCC argues that Plaintiff does not satisfy the commonality requirement because

some of the 103 putative class members were presumably mailed the second notice after the 30-day validation period. However, this argument goes to which potential class members actually meet the class requirements, not whether there are questions of law and fact common to the class.

CCC also argues that the legal and factual issues raised by Plaintiff's claims are not common to the class. According to CCC, it recently discovered that it previously tried to collect the debt at issue in this case in 2004 under a different account number. CCC sent Plaintiff an Exhibit A letter on April 30, 2004. (Spielman Decl. ¶ 9.) CCC also sent Plaintiff an Exhibit B letter on June 3, 2004. (Id.) The account was subsequently cancelled as uncollectible. (Id.) On September 8, 2006, the Association once again assigned the matter to CCC for collection. (Spielman Decl. ¶ 10.)[1]

CCC contends that (1) the initial written notice was the April 30, 2004 notice; (2) the Exhibit B letter dated October 9, 2006, was sent more than 30 days after the April 30, 2004 notice and therefore did not violate 15 U.S.C. § 1692g(b); and (3) the Exhibit A letter dated September 11, 2006, did not restart the 30-day period during which "overshadowing" communications are forbidden. The Court disagrees with CCC.

CCC relies on cases which hold that when a debt collector provides a validation notice following the "initial communication," a subsequent debt collector need not provide another validation notice and another 30-day validation period. See, e.g., Senftle v. Landau, 390 F. Supp. 2d 463, 473 (D. Md. 2005); Ditty v. Checkrite, 973 F. Supp. 1320, 1329 (D. Ut. 1997). However, these cases are distinguishable because they involve a subsequent debt collector's efforts to collect the *exact same debt* that was the subject of the initial debt collector's collection attempts. In addition, in these cases, a short period of time intervened between the first debt collector's validation notice and the subsequent debt collector's communications with the debtor.

---

[1] Plaintiff objects to this evidence as well as other evidence submitted by CCC in opposition to Plaintiff's class certification motion. Plaintiff's evidentiary objections are overruled as moot. As discussed herein, even considering the evidence, Plaintiff has established that certification of the proposed class is appropriate.

1        Here, the 2004 debt and the 2006 debt do not appear to be the same. The amount
2 owed on the 2004 account was $698.67. (Ex. 1 to Spielman Decl.) The amount owed on
3 the 2006 account was $1,339.45 (Ex. 2 to Spielman Decl.) Even assuming the 2006 debt
4 in the amount of $1,339.45 consisted in part of the $698.67 previously owing, due to the
5 additional amount allegedly owed and the passage of a significant period of time, the Court
6 believes that CCC was required to send a new validation notice and provide a new 30-day
7 validation period.
8        Therefore, the facts regarding CCC's 2004 collection attempts do not have any
9 bearing on Plaintiff's claims and do not defeat Plaintiff's showing of commonality. The facts
10 common to the class are that each member was sent an Exhibit B letter within 30 days of
11 having been sent an Exhibit A letter. The common and central legal question is whether the
12 Exhibit B letter overshadows the Exhibit A letter's validation notice. These shared issues of
13 fact and law are sufficient to support a finding of commonality. See Hunt v. Check Recovery
14 Systems, Inc., 241 F.R.D. 505, 510 (N.D. Cal. 2007) ("[C]ommonality typically manifests
15 where . . . the defendants have engaged in standardized conduct towards members of the
16 proposed class by mailing to them allegedly illegal forms." (Internal quotation marks and
17 citations omitted)).

### 3. Typicality

20        Representative claims are "typical" if they "are reasonably co-extensive with those of
21 absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.
22 "The test of typicality is whether other members have the same or similar injury, whether the
23 action is based on conduct which is not unique to the named plaintiffs, and whether other
24 class members have been injured by the same course of conduct." Hanon v. Dataproducts
25 Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted).
26        Plaintiff's claims are typical of the claims of the class because she, like the other
27 members of the class, was sent an Exhibit B letter within 30 days of having been sent an
28 Exhibit A letter, raising a legal claim of overshadowing in violation of 15 U.S.C. § 1692g(b).

1  CCC's arguments against typicality – i.e., that the operative validation notice in Plaintiff's
2  case was sent in 2004 and that Plaintiff cannot identify which putative class members were
3  actually mailed an Exhibit B letter within the 30-day period – are rejected for the same
4  reasons as discussed above.

### 4. Adequacy of Representation

To determine adequacy of representation, courts consider (1) whether the class representatives and their counsel have any conflicts of interest with other class members; and (2) whether the class representatives and their counsel will prosecute the action vigorously on behalf of the class. Hanlon, 15 F.3d at 1020.

The sole ground on which CCC challenges the adequacy of representation is that Plaintiff's claims are not typical of the class. However, the Court has already found that Plaintiff's claims satisfy the typicality requirement.

There do not appear to be any conflicts of interest or reasons why Plaintiff and her counsel would not vigorously prosecute this action on behalf of the class. It appears that Plaintiff understands her responsibilities as a class representative and is willing to carry them out. (Durham Decl. ¶¶ 3-9.) In addition, Plaintiff's counsel appear to be experienced in the areas of consumer litigation and class actions. (Decl. of Deborah L. Raymond; Decl. of O. Randolph Bragg.) Therefore, the Court finds that Plaintiff and Plaintiff's counsel would adequately represent the proposed class.

### C. Rule 23(b) Requirements

Plaintiff requests a "hybrid" class certification under Rule 23(b)(2) and Rule 23(b)(3). Plaintiff requests that the class be certified under Rule 23(b)(3) for monetary damages and under Rule 23(b)(2) for equitable relief. The Court finds that certification of the proposed class is proper under Rule 23(b)(3) only.

///
///

**1. <u>Rule 23(b)(3)</u>**

Rule 23(b)(3) applies if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Pertinent matters to consider include (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class. Fed. R. Civ. P. 23(b)(3).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the relationship between the common and individual issues." <u>Hanlon</u>, 150 F.3d at 1022 (internal quotation marks and citation omitted). "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis." Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 3d § 1778. When one or more of the central issues in the action are common to the class and can be deemed to predominate, certification may be proper under Rule 23(b)(3) even though other important matters, such as damages or affirmative defenses, will have to be tried separately. <u>Id.</u>

As discussed above in connection with the commonality requirement, the central factual and legal issues underlying Plaintiff's claims are common to the class. Plaintiff and the proposed class members were sent the Exhibit B letter within 30 days of having been sent the Exhibit A letter, raising the legal claim of overshadowing in violation of 15 U.S.C. § 1692g(b). These common and central issues predominate over any questions affecting only individual members.

CCC argues that the predominance requirement is not satisfied because the Exhibit B letters were mailed prematurely in error and CCC does not have a policy and practice of

sending Exhibit B letters within 30 days of sending Exhibit A letters. However, as the Court held in its prior order, there is a triable issue of material fact with respect to CCC's bona fide error defense. Moreover, CCC does not claim that the Exhibit B letter was prematurely mailed in error as to Plaintiff only, but that one employee was responsible for prematurely mailing the Exhibit B letters *in all 103 instances*. (Spielman ¶ 8.) Thus, according to CCC, the factual circumstances surrounding the premature mailing of the Exhibit B letters were the same in all 103 instances, and the same bona fide error defense applies as to all of the putative class members. These facts actually *support* a finding of predominance.

CCC repeats its argument that an individual investigation is required as to when each person's Exhibit B letter was actually mailed, rendering a class action inappropriate. Again, issues regarding when Exhibit B letters were mailed relate to who qualifies as a class member, not whether issues common to the class predominate.

CCC also argues that class treatment would be inappropriate because of the "likely" existence of individual defenses, such as (1) the defense that the Exhibit B letter was not sent within the 30-day period or (2) the defense that CCC or other collectors engaged in prior collection efforts on the same debt. Even assuming the first "defense" is a proper defense as opposed to a challenge to class membership, there is no evidence that there are a substantial number of individuals to whom this defense would apply. As for the second "defense," there has been no showing of any instance where the exact same debt was the subject of prior collection efforts.[2] CCC simply has not shown that individual defenses predominate over the issues common to the class.

The Court is convinced that the questions of law and fact common to the class members predominate over any questions affecting only individual members, therefore, the Court turns to the question of whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." CCC contends that the class action

---

[2] Furthermore, the legal merit of this defense is questionable. A number of courts have held that subsequent debt collectors must provide a new validation notice and a new 30-day validation period. See, e.g., Stair v. Thomas & Cook, 254 F.R.D. 191 (D.N.J. 2008); Turner v. Shenandoah Legal Group, P.C., 2006 WL 1685698 (E.D. Va. June 12, 2006); Tipping-Lipshie v. Riddle, 200 WL 33963916 (E.D.N.Y. March 2, 2000).

vehicle is not a superior method for resolving this case because the potential recovery in individual actions exceeds the maximum recovery each plaintiff could realize if the matter proceeded as a class action. A plaintiff pursuing an individual action may recover statutory damages of up to $1,000, plus any actual damages, costs and attorney's fees. 15 U.S.C. § 1692k(a). In the case of a class action, "the total recovery shall not exceed the lesser of $500,000 or 1 per centum of net worth of the debt collector . . . ." 15 U.S.C. § 1692k(a)(2)(B). According to CCC, its net worth is approximately $1,000,000. (Spielman Decl. ¶ 12.) Assuming the class would include about 100 people, each class member could receive a maximum of roughly $100.00.

Some courts have held that class litigation is not the superior means of adjudication in FDCPA cases where the potential recovery in individual actions is significantly greater than the individual recovery that may be obtained in a class action. See Sonmore v. Checkrite Recovery Services, Inc., 206 F.R.D. 257, 260-61 (D. Minn. 2001) (finding that the interest of class members in individually controlling the prosecution of their claims prevailed where class members were eligible for a maximum pro rata recovery of merely $25); Jones v. CBE Group, Inc., 215 F.R.D. 558 (D. Minn. 2002) (holding that class action was not the superior means of resolving the dispute because the potential recovery for class members was, at most, de minimus).

Other courts have held that a class action may be the superior method of adjudicating FDCPA claims even if the amount of potential recovery by each class member is small or negligible. In Abels v. JBC Legal Group, P.C., 227 F.R.D. 541 (N.D. Cal. 2005), for instance, the potential recovery per class member was $ 0.25. Nevertheless, upon consideration of the issues common to the class (issues regarding whether the defendants' form collection letters violated the FDCPA) and the efficiency of trying the legality of the collection letters in one action, the court held that a class action was the superior method for adjudicating the lawsuit. The court explained:

> The predominate legal issue is whether these letters violate the FDCPA. Additionally, a class action is the superior form of adjudication for this case. Many plaintiffs may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire

> competent counsel to protect their rights. A class action is judicially efficient in lieu of clogging the courts with thousands of individual suits. The FDCPA itself recognizes the propriety of class actions by providing special damages sections for class action cases.

Id. at 547 (quoting Sledge v. Sands, 182 F.R.D. 255, 259 (N.D. Ill. 1998). See also Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997) ("True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case."); Kalish v. Karp & Kalamotousakis, LLP, 246 F.R.D. 461 (S.D.N.Y. 2007) (holding that a class action was superior method of adjudicating the case even though individual recovery would be no more than $2.50 - "This is not a situation where claimants, waiting at the courthouse door to assert their FDCPA rights, will be denied justice by class certification. The unfortunate reality of this situation is that most of Defendant's approximately 700 FDCPA violations would probably go unnoticed absent this lawsuit.")

This Court agrees with the courts that recognize that a class action may be the superior method of adjudication even if the potential individual recovery may be greater in an individual action. Assuming the accuracy of CCC's net worth valuation, the potential recovery of each class member is about $100. Even though this amount may be less than what could be recovered in an individual action, a class action is the superior method of resolving the claims because many of the potential class members may not be aware of their rights or willing or able to find a competent attorney willing to take their case. There is no evidence that any other members of the potential class have filed or expressed a desire to file their own lawsuits. Furthermore, litigating the predominate legal issue – whether the Exhibit B letter, sent within 30 days of the Exhibit A letter, overshadowed the validation notice in the Exhibit A letter – in one class action as opposed to multiple individual suits promotes judicial efficiency and ensures consistency of rulings. The Court is not aware of likely difficulties in managing the class.

Accordingly, the Court finds that a class action is the superior method for adjudicating the controversy before it. Therefore, the Court grants Plaintiff's motion to certify the class under Rule 23(b)(3).

## 2. Rule 23(b)(2)

Plaintiff also requests certification under Rule 23(b)(2) as to the claims for equitable relief. The Court denies this request.

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The declaratory relief sought in this action would declare that CCC's practice of sending the Exhibit B letter within 30 days of sending the Exhibit A letter violates the FDCPA.

However, declaratory and injunctive relief are not available to private litigants suing under the FDCPA. The courts that have specifically addressed the issue of whether such relief is available to private plaintiffs in FDCPA actions uniformly hold that the FDCPA does not authorizesuch relief. Bolin v. Sears Roebuck & Co., 231 F.3d 970, 977 n. 39 (5th Cir. 2000).[3]

As explained by the Third Circuit in Weiss v. Regal Collections, 385 F.3d 337, 341 (3d Cir. 2004), although the FDCPA provides for injunctive or declaratory relief when the Federal Trade Commission brings an administrative enforcement action, 15 U.S.C. § 1692l, the FDCPA contains no express provision for declaratory or injunctive relief in private actions, 15 U.S.C. § 1692k. The different penalty structure demonstrates Congress's intent to preclude such relief in private actions. Id. at 342. See also Crawford v. Equifax Payment Servs., Inc., 201 F.3d 877, 882 (7th Cir. 2000) (noting that all private actions under the FDCPA are for damages); Sibley v. Fulton DeKalb Collection Service, 677 F.2d 830, 834 (11th Cir. 1982) ("Indeed, equitable relief is not available to an individual under the civil liability section of the Act.").

---

[3] In Irwin v. Mascott, 370 F.3d 924 (9th Cir. 2004), the Ninth Circuit affirmed an order of the magistrate judge holding parties in contempt for violating a permanent injunction entered in an FDCPA action. However, the issue of whether the FDCPA afforded equitable relief to private litigants in the first place was not raised before the court. Similarly, in cases where district courts in this circuit have certified classes seeking declaratory relief under the FDCPA pursuant to Rule 23(b)(2), it appears that nobody challenged the availability of declaratory or injunctive relief under the FDCPA. See, e.g., Del Campo v. American Corrective Counseling Services, Inc., 254 F.R.D. 585 (N.D. Cal. 2008); Hunt v. Check Recovery Systems, Inc., 241 F.R.D. 505, 512-13 (N.D. Cal. 2007).

Although the Ninth Circuit has not yet ruled on this issue, the Court agrees with the courts that have ruled that private litigants cannot obtain declaratory or injunctive relief under the FDCPA. Therefore, certification is not appropriate under Rule 23(b)(2). See Palmer v. Stassinos, 233 F.R.D. 546 (N.D. Cal. 2006) (holding that equitable relief is not available to private plaintiffs under the FDCPA and that certification under 23(b)(2) was therefore not appropriate under either Rule 23(b)(2) alone or in conjunction with Rule 23(b)(3)).

### III. CONCLUSION

For the reasons discussed above, Plaintiff's Second Motion for Class Certification is **GRANTED**. Pursuant to Rule 23(b)(3), the Court certifies the "Overshadowing or Contradicting Class" consisting of: (i) all natural persons with California addresses to whom (ii) Defendant CCC sent a letter in the form of Exhibit B to the FAC (iii) within 30 days of sending a letter in the form of Exhibit A to the FAC, as shown by the records of CCC (iv) on or after September 7, 2006 (v) in an attempt to collect a debt incurred for personal, family, or household purposes allegedly due for a nonprofit home owners or vacation owners association fees (vi) which was not returned by the U.S. Postal Service.

**IT IS SO ORDERED.**

DATED: July 14, 2010

Honorable Barry Ted Moskowitz
United States District Judge